**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GYKEE M.,[1]                                    :
          *Plaintiff,*                 :          **CIVIL ACTION**
   **v.**                                        :          **No. 25-2383**
                                            :
**FRANK BISIGNANO,**                       :
**Commissioner of Social Security,**       :
          *Defendant.*                :

**MEMORANDUM OPINION**

**HON. JOSÉ RAÚL ARTEAGA**                                      **April 16, 2026**
**United States Magistrate Judge[2]**

The Commissioner of Social Security, through an Administrative Law Judge ("ALJ"), determined that Plaintiff Gykee M. was not disabled and denied his claim for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and for Supplemental Security Income under the Act's Title XVI, 42 U.S.C. §§ 1381-1383. (Tr. 26.) Gykee M. seeks reversal and remand, arguing that the ALJ's decision was not based on substantial evidence because she failed to properly evaluate the medical opinion evidence. (ECF 10 at 4-8.) The Commissioner responds that the ALJ reasonably

---

[1] Gykee M. is referred to solely by his first name and last initial in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Feb. 12, 2026).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 6.)

evaluated the medical opinion evidence and Gykee M. provides no basis for disturbing the ALJ's determination. (ECF 11 at 6-12.)

After careful review of the complete record, Gykee M.'s request for review is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

Gykee M. applied for Disability Insurance Benefits and Supplemental Security Income on November 7, 2022, alleging disability beginning on March 1, 2021. (Tr. 63, 71.) Born in 1979, he was forty-one years old by the alleged onset date, or a "younger person" in disability terms. (Tr. 72.) *See* 20 CFR §§ 404.1563(c), 416.963(c). Gykee M. claimed disability due to arthritis, sciatica, degenerative disc disease, and scoliosis. (Tr. 64, 72.) His applications were denied initially and on reconsideration. (Tr. 63, 71, 95-96.) Gykee M. requested a hearing before an ALJ, and he and his counsel agreed to appear via telephone. (Tr. 119-20, 158-59.) The ALJ held a telephone hearing on May 3, 2024, where Gykee M. testified and was represented by counsel. (Tr. 32-57.) The ALJ also heard a vocational expert's ("VE's") testimony. (Tr. 57-61.)

Gykee M. testified that he operated a clothing store until March 2021. (Tr. 36-37.) His 2022 and 2023 federal tax returns showed that he had declared income after that, but he stated that the reported earnings were solely from his wife selling leftover merchandise from his defunct business. (Tr. 19, 36-37.) Gykee M. claimed that the only role he played in generating the reported income was pricing, which took about an hour. (Tr. 37-39.) Notwithstanding Gykee M's earnings in 2022 and 2023, the ALJ analyzed the entire period from Gykee M.'s alleged disability onset date. (Tr. 20.)

The VE stated that Gykee M.'s past relevant work at the clothing store was a composite job of a retail store manager (DOT 185.167-046) and a fashion designer (DOT 142.061-018), both skilled roles performed at the light exertional level. (Tr. 56-57.) In response to the ALJ's hypotheticals, the VE testified that an individual who could work at the light exertional level with certain limitations, including the need to alternate sitting and standing every thirty minutes, could perform (1) Gykee M.'s past relevant work and (2) jobs existing in significant numbers in the national economy. (Tr. 57-59.)

The ALJ denied Gykee M.'s application on May 3, 2024. (Tr. 14-33.) She determined that he was not disabled because he could perform past relevant work or other jobs existing in significant numbers in the national economy. (Tr. 24.) Gykee M. filed a request for review (Tr. 213-15), which the Appeals Council denied. (Tr. 1-6.) Gykee M. filed this action on May 9, 2025, seeking review of the Commissioner's final decision. (ECF 1.)

## II.    LEGAL STANDARDS[3]

The limited question before the Court is not whether Gykee M. was disabled. Rather, the Court must determine if substantial evidence supports the Commissioner's finding that he was *not* disabled and whether the Commissioner, through the ALJ, correctly applied the relevant law. 42 U.S.C. § 405(g). Working through ALJs, the

---

[3] The respective regulations governing claims for Disability Insurance Benefits, which can be found at 20 C.F.R. Part 404, and claims for Supplemental Security Income, which can be found at 20 C.F.R. Part 416, "are, as relevant here, not materially different." *Sims v. Apfel*, 530 U.S. 103, 107 n.2 (2000). Because the test for determining whether a person is disabled "is the same" for either class of benefits, the Court may consider case law developed under either provision in reaching a decision. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled under the Social Security Act. 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner considers whether the claimant: (1) is engaged in substantial gainful activity[4]; (2) has a severe impairment[5]; (3) has impairment(s) that meet or medically equal a listed impairment[6]; (4) has the capacity to do past relevant work, considering the claimant's residual functional capacity ("RFC")[7]; and (5) is able to do any other work, considering the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof is on the claimant at all steps except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010); *see also Zirnsak v. Colvin*, 777 F.3d 607, 611-12 (3d Cir. 2014) ("[D]uring steps two through four of the inquiry, the claimant *always* bears the burden . . . by a preponderance of the evidence . . . .") (emphasis added). At step five, "the burden of production shifts to the

---

[4] "The Commissioner generally presumes individuals have demonstrated the ability to engage in substantial gainful activity if they have earnings above a level set out in the regulations. *See* 20 C.F.R. §§ 404.1574, 404.1575, 416.974, 416.975.

[5] A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

[6] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[7] An individual's RFC is the most that they can do in a work setting despite the physical and mental limitations of their impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* §§ 404.1545(a)(2), 416.945(a)(2).

Commissioner, who must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with their medical impairments, age, education, past work experience, and RFC." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001) (citation modified).

The Social Security Act requires an ALJ to state the "reason or reasons upon which [a denial of benefits] is based." 42 U.S.C. § 405(b)(1). The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). To decide whether the record was sufficiently developed, the Court reads the ALJ's decision "as a whole." *Id.*

Courts review the Commissioner's factual findings to see if "substantial evidence" exists to support them by looking at the existing administrative record.[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019); *see also* 42 U.S.C § 405(g) (stating that factual findings supported by substantial evidence "shall be conclusive"). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation modified). It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

---

[8] Any legal issues the ALJ decides are subject to "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).

Where substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also Zirnsak*, 777 F.3d at 611 (stating that a court may "not substitute [its] own judgment for that of the fact finder"). Courts owe deference to the ALJ's assessment of the evidence if the decision "explain[s] what evidence [the ALJ] found not credible and why." *Zirnsak*, 777 F.3d at 612. "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (holding that an "ALJ is entitled to weigh all evidence in making [their] finding," even where there is record evidence "suggesting a contrary conclusion").

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing" the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Gykee M. bears the burden to explain how any "error to which he points could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009). Remand is not required if it would not affect the outcome of the case. *Rutherford*, 399 F.3d at 553.

## III.    DISCUSSION

Gykee M.'s sole complaint on appeal is that although the ALJ found that he had the RFC to perform light work[9] subject to additional restrictions, appropriate consideration of Cromwell Estrada, D.O.'s, medical opinion would have supported a finding that he was, instead, disabled. (*See* ECF 10 at 4.) However, a review of the record shows that the ALJ's RFC determination contains sufficient detail to permit meaningful review, and substantial evidence—evidence that a reasonable mind might accept as adequate—supports her rejection of Dr. Estrada's opinion.

As the ALJ explained, Dr. Estrada opined that Gykee M. was only "able to sit, stand and walk for three minutes" at a time and "required the use of a cane to ambulate." (Tr. 23; *see* Tr. 723 (Ex. B12F at 4).) Dr. Estrada concluded that Gykee M. was "unable to lift and carry any weight" and "[could not] work." (Tr. 23; *see* Tr. 722-23.) He opined that Gykee M. had "no use of feet for operation of foot controls" and could do "no postural maneuvers." (Tr. 23; *see* Tr. 724-25.) According to Dr. Estrada, Gykee M. could tolerate moderate noise, occasionally tolerate exposure to humidity, wetness, and pulmonary irritants, and never tolerate unprotected heights, moving mechanical parts, operating a motor vehicle, extreme temperatures, or vibrations. (Tr. 23-24; *see* Tr. 726.) Lastly, he

---

[9] *See* 20 C.F.R. § 404.1567, 416.967 (setting forth "physical exertion requirements of work in the national economy"). Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* §§ 404.1567(b), 416.967(b). Jobs in this category require "a good deal of walking or standing," or "some pushing and pulling of arm or leg controls" if they involve "sitting most of the time." *Id.* §§ 404.1567(b), 416.967(b).

opined that Gykee M. could not perform activities like shopping, traveling without a companion for assistance, walking a block at a reasonable pace on rough or uneven surfaces, climbing a few steps at a reasonable pace with the use of a single handrail, or caring for his personal hygiene. (Tr. 727.)

The ALJ "did not find Dr. Estrada's opinion of Gykee M.'s ability to do work-related activities persuasive." (Tr. 24 (citation modified).) Ultimately, she determined that Gykee M. had the capacity for light work subject to limitations. (Tr. 20.) She found that he could occasionally climb ramps and stairs and engage in postural maneuvers[10] but could never climb ladders, ropes, or scaffolds, use foot controls, or push/pull with the lower extremities. (*Id.*) Additional limitations included no exposure to unprotected heights and his need to "alternate standing/sitting every 30 minutes with a 10-minute change of position while remaining on task." (*Id.*) The ALJ rendered her RFC determination after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as well as "the medical opinion(s) and prior administrative medical finding(s)." (*Id.*)

Under the applicable regulations for claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a

---

[10] From the totality of the ALJ's RFC determination, it is apparent that the stated "postural maneuvers" included balancing, stooping, kneeling, crouching, and crawling. (*See* Tr. 20, 725.) *See* 20 C.F.R. §§ 404.1569a(c)(vi), 416.969a(c)(vi).

claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361. ALJs must "articulate how [they] considered the medical opinions" and "how persuasive" the opinions are. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). ALJs need to "explain only the dispositive reasons for their decisions, not everything else that they considered." *Id.* Said differently, ALJs "must always explain the reasons for their decisions. But that does not mean always explaining all the factors." *Id.* "A reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (citation modified). "While form is not irrelevant in the scripted analytical steps used to determine if someone is disabled," an ALJ need not "chant every magic word correctly" to avoid remand of "an otherwise thorough and well-reasoned opinion." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200 (3d Cir. 2019) (citation modified).

Supportability and consistency are the "most important" persuasiveness factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Unless an ALJ finds that two medical opinions are equally well-supported and consistent but not exactly the same, the ALJ *may*, but is not required to, discuss factors other than supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3). "[S]upportability relates to the extent to which a

medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Nolf v. Comm'r of Soc. Sec.*, No. 22-368, 2023 WL 8437872, at *1 n.1 (W.D. Pa. Dec. 4, 2023). An ALJ "need not reiterate the magic words 'support' and 'consistent' for each" medical opinion considered in reaching a determination. *Zaborowski*, 115 F.4th at 639. To address whether any doctor's opinion was supportable or consistent, the ALJ need only "weave supportability and consistency throughout [their] analysis of which doctors were persuasive"—no "magic words" are required. *Id.*

Gykee M. argues that the ALJ failed to adequately address the supportability and consistency factors when rejecting Dr. Estrada's opinion. (*See* ECF 10 at 4-8; ECF 12 at 1.) The Commissioner responds that the ALJ's RFC determination and evaluation of Dr. Estrada's opinion do not require remand because substantial evidence shows that Gykee M. "was capable of performing a range of light work." (ECF 11 at 6-12 (citation modified).) Considering the parties' respective arguments, the ALJ sufficiently articulated her consideration of the supportability and consistency factors, and remand is not required.

### A.    The ALJ Adequately Considered Supportability.

With respect to supportability, the ALJ concluded that Dr. Estrada's opinion "is not supported by his own treatment notes" for Gykee M. (Tr. 24.) Although these notes documented Gykee M.'s chronic back pain, the ALJ found that they "reflected normal range of motion and neck supple, no focal deficit, and normal and symmetric reflexes." (Tr. 24; *see* Tr. 510-15, 525-41 (Ex. B9F at 7-12), 903-13 (Ex. B18F at 9-19).) The ALJ also

noted that "there was no mention of [Gykee M.] using a cane" at his November 2023 visit with Dr. Estrada. (Tr. 24.) Although Gykee M. asserts that the ALJ failed to adequately address the supportability factor, he points to no evidence from Dr. Estrada's treatment notes that the ALJ failed to consider. (*See* ECF 10 at 4-8; ECF 12 at 1.) Upon review of the record, substantial evidence supports the ALJ's supportability determination.

Dr. Estrada offered his opinion in the form of a check-the-box questionnaire. (Tr. 722-27.) Forms where a physician's only obligation is to "check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Indeed, Dr. Estrada attached no narrative report, gave terse explanations for his findings, and provided no reasoning at all for his conclusions regarding Gykee M.'s environmental and activity limitations. (*See id.*) To sustain the remainder of his findings, Dr. Estrada cited Gykee M.'s own reports of pain and needing a cane to walk, as well as a February 25, 2023 MRI demonstrating his L5-S1 degenerative disc disease, minor canal stenosis, and mild facet arthropathy. (Tr. 723-25.) As the ALJ found, this imaging showed only minor degenerative changes which would not be expected to cause disabling symptoms. (*See* Tr. 22-24, 614-22.) Specifically, Gykee M. had mild canal stenosis at the T12-L1 level but none at L1-2 or L5-S1, and he exhibited "[m]ild lower thoracic and L5-S1 degenerative disc disease" and "foraminal narrowing *without cord or nerve impingement*." (Tr. 621-22 (emphasis added).)[11]

---

[11] One of Gykee M.'s treating physicians, Melissa Marie Gaspar, P.A.-C., reviewed the February 2023 MRI and opined that "surgery would *not* be indicated with these *minor findings*." (Tr. 614 (emphasis added).) She noted that "there [was] nothing more that [she

The ALJ examined Dr. Estrada's treatment notes spanning September 2020 to November 2023 to see if they supported his opinion. (Tr. 24.) The notes document Gykee M.'s subjective complaints of varying pain in his back, neck, and extremities. (*See, e.g.*, Tr. 513-15, 904-05.) July and August 2022 entries log Gykee M.'s reports of stiffness and pain that was aggravated by bending, lying down, sitting, standing. (Tr. 512, 527.) Gykee M. at times reported radiating pain, numbness, or tingling. (*See id.*) Although any of Gykee M.'s statements "concerning his symptoms must be carefully considered, the ALJ is not required to credit them." *See Chandler*, 667 F.3d at 363 (citation modified). In contrast, Dr. Estrada's objective findings are unremarkable. He consistently found that Gykee M. had normal and symmetric deep tendon reflexes and a supple neck with full range of motion. (Tr. 513, 528, 536-37, 905.) Dr. Estrada noted that Gykee M. exhibited a normal range of musculoskeletal function (Tr. 528, 536) and suffered from no focal deficits. (Tr. 905.) Only one of Dr. Estrada's four treatment notes documented Gykee M.'s claim that he needed to use a cane to walk. (*See* Tr. 511-13 (noting, without further explanation, that Gykee M. "is in need of cane to help with mobility"). *Cf.* Tr. 527-28, 535-36, 904-05 (failing to note his need for a cane).)

That some record evidence considered by Dr. Estrada supports his opinion is insufficient to disturb the ALJ's conclusion that it was not supported when considering all of the available evidence. *See Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992)

---

could] see to offer" Gykee M. other than chiropractic care and evening use of pain medication and muscle relaxants. (*Id.*)

(noting that an ALJ has a duty to weigh the medical evidence and choose between conflicting evidence). Considered as a whole, the record demonstrates that there is "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's supportability determination, *i.e.*, there is substantial evidence. *Biestek*, 587 U.S. at 103. The Court may not re-weigh the evidence to find otherwise. *Chandler*, 667 F.3d at 359.

### B.    The ALJ Adequately Considered Consistency.

Substantial evidence also supports the ALJ's consistency analysis. She found Dr. Estrada's conclusion that Gykee M. could not work was inconsistent with other evidence in the record. (Tr. 24.) Although treatment notes documented Gykee M.'s positive facet loading test bilaterally and "tenderness to palpation over the upper lumbar facet joints and bilateral paraspinal[] muscles of the lumbar spine," the ALJ found that the notes also established his "stable gait with 5/5 motor strength in the lower extremities, and intact light touch in the upper and lower extremities." (*Id.*; *see* Tr. 334-440 (Ex. B2F), 447-60 (Ex. B5F), 607-719 (Ex. B11F), 856-94 (Ex. B17F), 914-38 (Ex. B19F).)

Gykee M. takes issue with the ALJ's consistency analysis for failing to sufficiently address record evidence that he claims supports Dr. Estrada's conclusions. (ECF 10 at 5-8.) Specifically, Gykee M. argues that the ALJ "did not adequately address his 2023 x-ray or spring 2023 physical therapy records" (*see* Tr. 464-73, 477-84 (Ex. B6F at 4-13, 17-24)), which showed ossification of his lumbar vertebrae, mobility restrictions, and neurological deficits. (ECF 10 at 6-7 (citation modified).) Gykee M. also claims that the ALJ's failure to discuss his need for a home health aide is reversible error. (ECF 10 at 7.) The Commissioner responds that the ALJ was not required to discuss every piece of

13

evidence in the record and that the evidence Gykee M. points to does not establish additional limitations. (ECF 11 at 7-9, 12.) The Commissioner argues that the ALJ properly considered the overall record and adequately explained her reasons for discounting Dr. Estrada's opinion, particularly since she gave Gykee M. "the benefit of the doubt" and "increased the extent" of his limitations. (*Id.* at 10-11.) The regulations required the ALJ to consider how consistent Dr. Estrada's opinion was with the medical and nonmedical evidence. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). A review of her decision shows that this is what she did.

The ALJ first considered Gykee M.'s administrative hearing testimony. (Tr. 21.) Gykee M. stated that he could not work because of constant "tight motion" in his back as well as neck pain and "non-stop," "excruciating" back pain. (Tr. 43.) He claimed that his pain caused him to be unable to fully bend, pick up anything from the ground, or drive a vehicle. (Tr. 43-44, 46.) According to Gykee M., he spent most of the day in bed or just "just [l]ying around." (Tr. 43, 48.) He testified that he could only spend three to five minutes in a straight back chair and continuously moved between his bed and a reclining chair for comfort. (Tr. 47-48.) He reported that he started using a cane in early 2023, could only sleep four hours a night and could only stand or walk for three to five minutes at a time. (Tr. 49-50.) He claimed to rely on a home health aide to get downstairs and perform chores and daily living activities.[12] (Tr. 51, 53.) As for his treatment, Gykee M. testified

---

[12] The medical record indicates that Gykee M. inquired about having a home health aide in August 2022. (Tr. 346-47.) A social worker explained the waiver program, and Gykee M. stated that his sister-in-law would most likely agree to be his aide. (*Id.*) Subsequent treatment notes do not discuss a home health aide (*see, e.g.,* 826-27), and the

that he received several ablations to no relief and that one of his medications caused drowsiness. (Tr. 52-54.) The ALJ found that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21.)

In reaching this conclusion, among other things, the ALJ considered imaging of Gykee M.'s neck and back. (Tr. 21-22.) A December 2020 MRI showed mild degenerative changes at L5-S1 and "no significant stenosis" in the lumbar region, as well as degenerative changes at T4-5 with mild central stenosis in the thoracic spine but no "cord compression or cord signal abnormality." (Tr. 573, 876-77.) A July 2022 x-ray showed mild disc height loss and endplate degenerative change at C4-5 through C6-7 with small anterior osteophytes at those levels. (Tr. 418.) In November 2022, an x-ray revealed degenerative changes at T12-L1 and L5-S1 in the lumbar region and age-related degenerative changes in the thoracic spine. (Tr. 631-33.) Like the 2023 MRI, these modest findings were inconsistent with the severity of Gykee M.'s alleged symptoms and Dr. Estrada's conclusions.

---

only other evidence of an aide is Gykee M.'s testimony. The ALJ did not explicitly discredit this testimony. (*See* Tr. 21-24.) Nonetheless, she found that Gykee M.'s claims about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the overall record, including his testimony. (Tr. 21.) The ALJ's explicit consideration of Gykee M.'s use of a home health aide vitiates his argument that the ALJ did not adequately address the issue in her determination. (ECF 10 at 7.) Gykee M.'s claim also provides no basis for remand because he has not shown that further discussion of his use of an aide would have resulted in a different case outcome. *See Rutherford*, 399 F.3d at 553.

While the ALJ did not explicitly weigh the 2023 x-ray that Gykee M. cites in his brief, this evidence was immaterial to her disability analysis, and the failure to do so does not require remand. *See Johnson*, 529 F.3d at 204 (noting that an ALJ need not "cite all evidence a claimant presents, including evidence that is irrelevant to [their] case"); *see also Zaborowski*, 115 F.4th at 639 (holding that ALJs need not discuss everything that they considered in reaching a decision). The x-ray showed mild retrolisthesis of L4-5 and L5-S1 that was unchanged from 2016 x-rays as well as L5 vertebrae sacralization and anterior longitudinal ligament ossification that "could represent early stages of" diffuse idiopathic skeletal hyperostosis. (Tr. 476.) This last finding was only a possible diagnosis. Even were Gykee M. to have the condition, "a mere diagnosis, without more, does not render an applicant eligible for benefits." *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991). Gykee M. "never testified that this condition affected his work in any way," *id.* (citation modified), and he has not shown that it or the other findings in the x-ray "resulted in disabling limitations." *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004).

The ALJ also considered Gykee M's conservative treatment. (Tr. 21-23.) He participated in physical therapy in 2019 (Tr. 450), received trigger point injections in August 2021 (Tr. 362), and was advised to consider such injections in November 2022 and September 2023. (Tr. 337, 611.) Gykee M. underwent nerve ablation procedures at the bilateral L3-5 levels in March 2021 (Tr. 872-74) and October 2022 (Tr. 865-67), and at the left L1-3 levels in January 2024. (Tr. 859.) He received bilaterial L3-5 medial branch nerve/dorsal ramus blocks in February and March 2021 (Tr. 874-76) and December 2023 (Tr. 859-60), and a second confirmatory L1-3 medial branch nerve/dorsal ramus block in

December 2023. (Tr. 860, 931.) Gykee M. took a variety of pain medications and muscle relaxants (*see, e.g.*, Tr. 359, 368-69, 451) but was at times noncompliant. (*See, e.g.*, Tr. 364-65, 613.) Despite his hearing testimony that he got no relief from ablations, Gykee M. reported that his treatments gave "complete relief" from pain in November 2021 (Tr. 355-56) and "at least a 50% percent reduction in pain" by September 2022. (Tr. 343-44.) He reported no relief from procedures in March 2023 (Tr. 484), some relief with medication in September 2023 (Tr. 612), and temporary relief from procedures in December 2023. (Tr. 932.) Considering Gykee M.'s treatment evidence, the ALJ found that Dr. Estrada's opinion was inconsistent with the "longitudinal evidence of record," which showed that his "symptoms were managed with medication, therapy, radiofrequency procedures, and injections." (Tr. 24.)

The ALJ then evaluated medical evidence that Dr. Estrada did not consider which indicated Gykee M.'s limiting, but not disabling, symptoms. (Tr. 21-24.) Gykee M. sometimes reported radiating pain, numbness, or tingling (Tr. 344, 351, 369, 387, 453, 932 (symptom(s) absent); Tr. 344, 356, 450, 652, (symptom(s) present)), and frequently tested negative for the straight leg test. (*See* Tr. 346, 358, 614, 654, 666 (negative); Tr. 387, 453, 476, 831 (positive).) At times he reported using a cane (Tr. 346, 348, 457, 512, 628), and often he claimed worsening pain from walking long distances and bending. (*See* Tr. 450, 612, 637, 723 (pain).) In comparison, clinicians noted his (1) good range of back motion frequently (*see* Tr. 357, 366, 369, 639, 932 (full range or minimal limitation with some pain); Tr. 452, 654 (limited range)), (2) stable gait about half of the time (*see* Tr. 340, 385, 452, 476, 581, 612-14 (no gait issues); Tr. 338, 345, 356, 360, 374, 385, 455, 932 (gait issues)), (3) full

17

leg strength often (*see* Tr. 452, 574, 612, 932 (full strength); Tr. 360 (Gykee M. reporting occasional weakness)), (4) intact range of motion in his hip and knee with no pain (Tr. 453), and (5) intact light touch sensation in his arms and legs. (Tr. 452, 456.) Providers also noted that Gykee M. was tender to palpation but did not exhibit "distress" or "overt pain behavior." (Tr. 340, 346, 357, 361, 452, 456, 614, 934.)

The ALJ also considered and credited as persuasive the prior administrative medical findings of Crescenzo G. Calise, M.D.,[13] and Joanna M. Deleo, D.O. (Tr. 23.) Both doctors opined that Gykee M. could do light work with limitations. (Tr. 64-70, 72-78 (Ex. B2A; Ex. B4A), 79-94 (Ex. B5A; Ex. B6A).) The ALJ concluded that these doctors adequately supported their opinions with citations to Gykee M.'s symptoms and medical imaging. (Tr. 23.) She found their opinions "somewhat consistent" with medical records that generally showed Gykee M.'s stable gait, 5/5 motor strength in his legs, and intact light touch in his arms and legs. (*Id.*) However, she also noted that these doctors failed to credit Gykee M.'s positive tests for facet loading bilaterally and tenderness to palpation over the upper lumbar facet joints and bilateral paraspinal muscles. (*Id.*) Thus, the ALJ gave Gykee M. "the benefit of the doubt as to the limiting effects from his impairments and medications" and adopted a more restrictive RFC than what Drs. Deleo and Calise proffered. (*Id.*)

---

[13] The ALJ's decision erroneously lists Dr. Calise's name as "James P. Bailey, M.D." (*See* Tr. 23, 69, 77.)

Moreover, the ALJ's failure to discuss Gykee M.'s March and April 2023 physical therapy notes does not necessitate remand because her comprehensive decision permits meaningful review. *See Jones*, 364 F.3d at 505; *see also Zaborowski*, 115 F.4th at 639-40 (noting that ALJs need only state the dispositive reasons for their decisions). In the first physical therapy note from March 1, Mark Tieleman, P.T., recorded that Gykee M. had maximal, minimal, and moderate restrictions on his thoracic and lumbar ranges of motion for (1) flexion, (2) extension, and (3) lateral flexion and rotation, respectively. (Tr. 482.) During strength testing, Gykee M.'s right knee gave way from an extended position when P.T. Tieleman applied strong pressure. (*See* Tr. 483.) Gykee M.'s pain and ability to complete exercises varied over the course of treatment, but he showed some improvement. On March 13, another clinician noted that Gykee M. could forward flex to ninety degrees while seated. (Tr. 476.) By March 17, P.T. Tieleman found that Gykee M. had an improved range of spinal motion and ability to tolerate spinal exercises. (Tr. 471.) At his last session on April 17, Gykee M. showed good exercise technique and improvement in hip strength training with no back spasms or radiating pain. (Tr. 464.) P.T. Tieleman documented that Gykee M.'s "symptoms appear[ed] to be less irritable" and that he "would benefit from continued" therapy. (*Id.*) But Gykee M. missed his last two appointments and did not maintain contact with the rehabilitation center, so they discharged him from care. (Tr. 769.)

Unlike in *Robinson v. Kijakazi*, the ALJ did not provide a "skewed reading of the record" by failing to analyze the physical therapy notes as Gykee M. contends. (ECF 10 at 5-6.) *See Robinson*, No. 20-5836, 2022 WL 2209284, at *3-5 (E.D. Pa. June 17, 2022)

19

(remanding where an ALJ rejected a consistent and well-supported medical opinion by pointing to medical records with unchanging "boilerplate notations" of the claimant's normal mood despite those records also noting her depression). Primarily, the notes do not support Dr. Estrada's opinion about Gykee M.'s physical limitations. (Tr. 723-25.) Gykee M.'s ability to complete exercises including (1) forward flexion with a physio-ball, (2) double knee to chest, and (3) repeated extensions while standing belie Dr. Estrada's claims that Gykee M. could never engage in postural maneuvers and could only walk, sit, and stand for up to three minutes. (*See* Tr. 465.) While Gykee M. told P.T. Tieleman once that he had to use a cane the day prior (Tr. 478), P.T. Tieleman never noted that Gykee M. needed an assistive device during his therapy sessions. Rather, Gykee M. had a normal heel/toe walk and normal or good strength in his legs. (*See* Tr. 483.) Additionally, the ALJ had already considered many of Gykee M.'s symptoms documented in the notes (*e.g.*, tenderness to palpation of the lumbar paraspinal muscles). (*See* Tr. 24, 481.) *See Fargnoli*, 247 F.3d at 42 ("We do not expect the ALJ to reference every relevant treatment note in cases with voluminous medical records." (citation modified)).

Ultimately, the ALJ decided that Dr. Estrada's opinion that Gykee M. was disabled was inconsistent with the available medical and nonmedical evidence. (Tr. 24.) While Gykee M.'s alleged limitations are "supported by some medical evidence," they are "opposed by other evidence in the record," so the ALJ was entitled to discredit them. *Zirnsak*, 777 F.3d at 615. Further, Gykee M.'s treatment providers recommending that he not "seek intensive treatment permitted the ALJ to infer that his spine disorder was not severe enough to require more than conservative treatment." *Dietrich v. Saul*, 501 F. Supp.

3d 283, 297 (M.D. Pa. 2020) (citation modified); *see also Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008) (affirming an ALJ's denial of benefits where conservative treatment contradicted the degree of the claimant's alleged symptom severity).

The Court may not re-weigh the evidence to make its own factual determinations. *Chandler*, 667 F.3d at 359. Because the record contains substantial evidence supporting the ALJ's consistency determination, remand is not required based on this argument. *Biestek*, 587 U.S. at 103.

### C.     CONCLUSION

Upon review of the record, substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate"—exists to support the ALJ's conclusion that Dr. Estrada's opinion was not persuasive. *Biestek*, 587 U.S. at 103. Substantial evidence is a "low threshold." *Zaborowski*, 115 F.4th at 640. Because Gykee M. has not shown that any of his complaints about the ALJ's consideration of Dr. Estrada's opinion or the other record evidence would have changed the outcome of his case under the governing regulations, remand is not required to further consider it. *Rutherford*, 399 F.3d at 553. Therefore, Gykee M.'s request for reversal and remand is **DENIED**. The Commissioner's final decision is **AFFIRMED**, and this matter is **DISMISSED**.

An appropriate Order follows.